Teall *v.* Felton.

---

SAME TERM. *Before the same Justices.*

TEALL *v.* FELTON.

Trover will lie in a state court, against a postmaster, for the conversion of a newspaper belonging to the plaintiff.

To justify such an action, however, the conversion should be clearly proved. The withholding of the paper should be shown to be without color of right; and the plaintiff should establish his own title to it, by unquestionable evidence.

Rights and duties of postmasters in charging newspapers on which initials are placed, with letter postage. And what are to be deemed marks or signs within the meaning of the act of congress, subjecting newspapers, &c. to letter postage.

ERROR to the Onondaga Common Pleas. Mary C. Felton, by her next friend Charles T. Hicks, sued William W. Teall in an action of trover, before a justice of the peace. The plaintiff declared against the defendant for converting one newspaper, called the Michigan Expositor, of the value of six cents, and also one newspaper wrapper of the value of six cents, the property of the plaintiff. Plea the general issue. The cause was tried by a jury. The plaintiff proved by Charles D. Bickford, a clerk in the post office at Syracuse, that a paper called the Michigan Expositor, came to that office from the state of Michigan, directed to the plaintiff. That he put the paper in the box of Charles T. Hicks; who called for the contents of

Teall *v.* Felton.

his box.  That witness handed out the paper and called the postage 10 or 15 cents.  Hicks refused to take it, and the witness put it back into the box. ، The postage was marked on it at the Syracuse post office.  That newspapers usually come without the postage marked upon them.  That the regular postage on a paper from Michigan to Syracuse was 1½ cents.  That the defendant is and was at the time, postmaster at Syracuse; that the paper came in the regular mail; that there was an initial upon the wrapper of the paper; it was distinct from the direction and no part of it; thinks it was on so when the paper came to the office.  That the paper was detained by the direction of the defendant as postmaster.  That it is the general custom to charge letter postage on newspapers having on them a single initial.  It was under such custom that letter postage was charged on this paper.  That there was a single letter on the wrapper.  Witness marked it as charged, solely on the ground that the letter was on it.  It was marked so because it weighed that amount.  If the paper weighed half an ounce the postage would be 10 cents; if over half an ounce 20 cents.  That the paper would weigh at least half an ounce.  The defendant objected to the production of further evidence on the part of the plaintiff, on the ground that the court had no jurisdiction.  This objection was overruled.  The plaintiff then proved by another witness a demand of the paper at the post office, by Hicks; that the paper was handed out by Raynor, a clerk, who said the postage was 15 cents; upon which Hicks said : " I tender you the postage," and extended his hand with money in it, there was a quarter of a dollar and some cents ; that he offered to pay the ordinary postage on a newspaper, the legal newspaper postage from Michigan to Syracuse.  The clerk refused to deliver it on those terms, and said Hicks could not have it unless he paid that amount.  It was admitted by the defendant that Raynor was a clerk in the post office, and that Hicks had authority to demand the paper for the plaintiff, and that it was of the value of six cents.  The plaintiff then rested his cause, and the defendant moved for a nonsuit; which motion was denied.  The defen-

Teall *v*. Felton.

dant then offered in evidence the annexed circular from the post office department, and also the post office law of 1845.

" *To Postmasters.* I am directed by the postmaster general to call your special attention to the multiplied and increasing attempts to violate the law, and defraud the revenue by writing on the wrapper, margin or other portion of newspapers, pamphlets and magazines sent by mail. The cheap postage system has removed every reasonable excuse for violating or evading the law. And too much vigilance cannot be exercised by postmasters to detect and punish the offenders, and public sentiment when well informed will not fail to sustain you in the faithful discharge of this duty, which is as imperative upon you as any other. That frauds of this kind may be detected and traced to their origin, you are particularly instructed to stamp or mark in writing any *transient* (by which is meant all not regularly sent to subscribers) newspapers, pamphlets or magazines, with the name of the office and the amount of postage. The wrappers of all such newspapers, pamphlets or magazines, when they have reached their destination should be carefully removed, and if upon inspection, found to contain any manuscript or memorandum of any kind, either written or stamped, or by marks or signs made in any way, either upon any newspaper, printed circular, price current, pamphlet or magazine, or the wrapper in which it is enclosed, by which information shall be asked for or communicated, except the name and address of the person to whom it is directed, such newspaper, printed circular, price current, pamphlet or magazine, with the wrapper in which it is enclosed, shall be charged with letter postage by weight. If the person to whom the newspaper, printed circular, price current, pamphlet or magazine is directed, refuses to pay such letter postage thereon, the postmaster will immediately transmit the same to the office from whence it was forwarded, and request the postmaster thereof to prosecute the sender for the penalty of five dollars, as prescribed by the 30th section of the act of 1825. Suits may be brought either in district courts or before state magistrates having civil jurisdiction in actions of debt, for this amount, under the respective state laws. The

name of the sender written or stamped, either upon the newspaper, printed circular, price current, pamphlet or magazine, or the wrapper in which it is enclosed, communicates such information as subjects it to letter postage, and the consequential penalties if such postage is not paid at the place of its destination.

The diminution of the revenue of the department under the cheap postage system, and the great and increasing demand for additional mail facilities throughout our country, whose territory now extends to the Pacific, renders it absolutely necessary, not only that every cent of lawful revenue be collected and accounted for, but that the utmost vigilance should be exercised for the prevention of fraud, and the sure and speedy infliction of the proper penalty upon the offender. This can only be accomplished by the strictest attention of postmasters, who are the sworn agents of the department, and bound to see the laws faithfully administered.

Post Office Department, Dec. 4, 1846.

W. J. Brown, 2d Assistant Postmaster General."

The jury found a verdict for the plaintiff for six cents, and the justice rendered a judgment in favor of the plaintiff for $2,95 damages and costs. The defendant carried the cause to the court of common pleas, by a certiorari, and that court affirmed the judgment of the justice; whereupon the plaintiff sued out a writ of error from this court directed to the common pleas.

*S. A. Dillaye,* for the plaintiff in error.

*Gardner & Burdick,* for the defendant in error.

*By the Court,* Gridley, J. We have no doubt that this action was properly brought in a state court. If a letter enclosing a thousand dollars in bank notes had been sent by mail to the post office in Syracuse, directed to the plaintiff, and had been withheld by the postmaster, unlawfully, after a tender of the postage chargeable on the package, it is difficult to see why an action would not lie against the postmaster in a state court

Teall *v*. Felton.

for a conversion of the money. The injury is one for which the common law gives redress; and the party injured may seek his redress by the usual common law remedy, in any appropriate common law tribunal. The case is not one where the remedy is given by an act of congress, and is to be sought in the courts of the United States. So, too, we are of the opinion, that the conversion of a newspaper belonging to a citizen may be the foundation of an action of trover, in the appropriate state tribunal, notwithstanding the party guilty of the conversion should be a postmaster. To justify such an action, however, the conversion should be clearly proved. The withholding of the paper should be shown to be without color of right, and the plaintiff should establish his own title to it by unquestionable evidence.

This view of the case brings us to the consideration of the question, whether there is any error apparent on the record, for which we should be warranted in reversing the judgment in this cause. This will depend on the facts proved upon the trial of the cause; or rather upon what we are to adjudge to be the facts of the case as settled by the verdict of the jury.

By the act of 1845, (*Acts of 2d Session of 28th Congress, page* 24, *section* 1,) the defendant was bound to charge with letter postage, not only letters in manuscript, but also " *a paper of any kind by or upon which information shall be asked for or communicated in writing, or by marks and signs, &c.*" Now it is quite clear that an initial may be so placed upon a paper as to convey information, and precisely such information as was intended to be prohibited by the act. For instance; a person whose initial is known to his correspondent, and who may be travelling to a certain place in Michigan, may thus communicate, to a distant friend, the fact of his arrival. So a distant correspondent may, by a paper, which in itself contains nothing of importance, on which is inscribed his initial, communicate the fact of his friendly remembrance and recognition, and of his own good health. There are cases, therefore, in which a postmaster may only be doing his duty under the act, in charging such a paper with letter postage. And chapter 58, section

426, of the regulations for the government of the post office department, shows that it is immaterial whether the writing or sign or mark is on the paper or on the wrapper.   We have no doubt that the above is a sound though a severe interpretation of the act, when we consider the object for which it was passed, and the change in the phraseology from that employed in the act of 1825.   But it is equally clear that an alphabetical character (which would be an initial of some word or name) may often be found inscribed on the wrapper of a newspaper, made carelessly, and with no definite intent, or which may have been upon the paper used as a wrapper before it was employed for that purpose.   In such a case, the initial would be no evidence at all that it was a mark or sign by which information was asked or communicated.   Now we have no evidence in this return of the justice, that this single letter was a capital letter, whether it appeared to be written by the same hand, or with the same ink and pen with the address on the wrapper or not, nor as to what position it occupied on the wrapper.   Nor have we any evidence whatever to show, by circumstances or otherwise, whether it was probably written by the person who sent the paper, to communicate information, or not.   For aught we know, it was written with a different ink, and pen, and hand, and was placed in such a position upon the wrapper as to indicate that it was there by accident, and not by intent.   It is true that the evidence does not show that it was so, nor does it show the contrary ; and that is precisely the case where the law declares that every intendment and presumption is to be made in favor of, and to uphold the verdict of a jury.   If the facts were such as to indicate an *intentional* making of the letter by the same hand that wrote the address, *that* should have appeared on the return of the justice. (*See* 18 *Wend.* 141; 3 *John.* 435, 439; 2 *Id.* 378.)   The jury saw the witnesses, and may have had opportunities to arrive at the truth which we have not.   Hence the difficulty of setting aside the verdict when there is room for controversy about the facts.

We must hold, therefore, inasmuch as it may have been an accidental mark, that the jury have found that it was so.   This we feel bound to adjudge, while we can readily imagine that

by means of a careless mode of trying the cause, or of an imperfect return, injustice may have been done to the defendant below.

Judgment of common pleas affirmed.

